FILED
2008 Jul-18 PM 03:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WENDOLYN B. HARRIS, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 2:07-CV-992-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.  Introduction.

Wendolyn B. Harris ("Plaintiff") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for period of disability, disability insurance benefits ("DIB") and supplemental security income ("SSI").  Ms. Harris timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Harris was forty-five years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a general education certificate ("GED"),

with one year of college. (Tr. at 18.) Her past work experience includes employment as a realtor and home renovator. *Id*. Ms. Harris claims that she became disabled on January 8, 2003,[1] due to rheumatoid arthritis, chronic pain and fatigue, and mood disorder. *Id*. at 17-18.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20

---

[1] Plaintiff originally alleged August 1, 2001, as the onset date of disability. However, at the hearing before the ALJ, Plaintiff's request to amend her applications to reflect an alleged onset of disability to January 8, 2003, was granted.

C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Harris met the insured status requirements of the Social Security Act through December 31, 2004. (Tr. at 18.) She further determined that Ms. Harris has not engaged in substantial gainful activity since the alleged onset of her disability. *Id*. According to the ALJ, Plaintiff has the following impairments: "depression, anxiety, and severe rheumatoid arthritis." *Id*. at 21. However, she found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. *Id*.

According to the ALJ, Ms. Harris is a "younger individual," as defined by the regulations. *Id*. The ALJ determined that Plaintiff cannot perform her past relevant work, but,

> is able to perform simple tasks in a non threatening environment. She can lift 20 lbs. maximum with frequent lifting of up to 20 pounds; standing and/or walking at least 6 hours in an 8 hour work day; sitting at least 6 hours in an 8 hour work day; no vibrations; occasional posturals; no ladders, ropes[,] scaffolds; avoid exposure to extreme cold and extreme wetness; avoid exposure to unprotected heights and dangerous machinery.

*Id*. at 21-22. Further, through the testimony of a vocational expert ("VE"), the ALJ determined that there are a significant number of jobs in the

regional and national economy that Plaintiff is capable of performing, given her age, education, past work experience, and residual functional capacity. *Id.* at 20. These jobs include: cashier (13,000-16,000 jobs available in north central Alabama; over 100,000 jobs nationally), clerical (8,000-10,000 jobs available in north central Alabama; over 100,000 jobs nationally), and material handler (2,000-3,000 jobs available in north central Alabama; tens of thousands of jobs nationally). The jobs listed are "'unskilled' light work activities." *Id.* The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, as amended, at any time on or before the date of this decision." *Id.* at 22.

II.   Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of

the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.     Discussion.

Ms. Harris alleges that the ALJ's decision should be reversed and remanded for two reasons.  First, Plaintiff claims "the medical evidence supports a period of disability."  (Doc. 7 at 5.)  Second, Plaintiff believes "the ALJ's RFC findings are not based on substantial evidence."  *Id.* at 8.

A.     Medical Evidence.

Plaintiff alleges the ALJ failed to consider the examining and treating notes of Dr. Anthony Saway in concluding that Plaintiff is not entitled to a period of disability.  (Doc. 7 at 5-8.)  A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).  The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source.  *See* 20 C.F. R. §§ 404.1527(d), 416.927(d).  Furthermore, "good

cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

In making her determination, the ALJ relied chiefly upon the opinions Dr. John Lisiak, Dr. Vu-Dinh Minh, and Dr. James Blake. On March 29, 2004, Dr. Lisiak, a consultative physician, examined Plaintiff due to her complaints of rheumatoid arthritis and depression. (Tr. at 19.) Although Dr. Lisiak diagnosed Plaintiff with rheumatoid arthritis, he observed that Plaintiff sat through the interview without obvious pain or distress, and her gait was unimpaired. *Id.* Plaintiff moved around without help or support, and without the use of a cane or other assistive device. *Id.* She had a full range of motion with no noteworthy abnormalities in her upper and lower extremities, no spasm in her neck or in the lumbar paravertebral muscles, and her "straight leg raising was negative for

radicular pain." *Id*. Further, while Dr. Lisiak determined Plaintiff would be "limited in lifting and carrying 25 lbs. occasionally," he concluded that there were "no limitations in the use of upper extremities," no limitation in sitting, and no limitations as to her "alleged neurologic and psychiatric conditions." *Id*.

As noted by the ALJ, Dr. Lisiak's findings were considered by Dr. Vu-Dinh Minh, an internist who testified at Plaintiff's hearing as a medical expert. *Id*. Dr. Minh noted Plaintiff's history of rheumatoid arthritis, however he found Plaintiff had "no significant loss in function." *Id*. Based on the entire medical record, Dr. Minh concluded Plaintiff

> would be limited to lifting 20 lbs. maximum with frequent lifting of up to 20 pounds; standing and/or walking at least 6 hours in an 8 hour work day; sitting at least 6 hours in an 8 hour work day; no vibrations; occasional posturals; no ladders, ropes scaffolds; avoid exposure to extreme cold and extreme wetness; and avoid exposure to unprotected heights and dangerous machinery.

*Id*. The ALJ agreed with the opinion of Dr. Minh, "as it comports with the evidence of record." *Id*.

Also in accordance with the findings of Dr. Minh was the opinion of Dr. James Blake, Plaintiff's consultative physician who evaluated her in January 2006. *Id*. Dr. Blake found that Plaintiff's "pain did not effect her everyday functioning; very mild impairment from pain or fatigue." *Id*.

In contrast to the medical findings discussed above which were relied upon by the ALJ, Plaintiff relies primarily upon the reports and opinions of Plaintiff's treating physician, Dr. Anthony Saway, in alleging Plaintiff met a period of disability. (Doc. 7 at 5-7.) Plaintiff states that the ALJ "failed to report a single word of these examining or treating notes." *Id*. at 7. In January 2003, Dr. Saway found Plaintiff, with a weight of 191.5 pounds, was suffering from "seropositive rheumatoid arthritis with erosive changes in her feet," as well as tenderness of joints, particularly in the right hand. (Doc. 7 at 5, Tr. at 164-65.) In July 2003, Plaintiff was found to be suffering from synovitis of the hands, wrists, and some in the elbows, with "[t]enderness in the shoulders . . . , hips and knees." Tr. at 162. In April 2004, tenderness was still present in the left hand, with slight restricted hand range, "with some splaying of the forefoot consistent with rheumatoid type changes." *Id*. at 232. By August 27, 2004, Dr. Saway's examination of Plaintiff revealed that her weight was up to 208 lbs, and that her rheumatoid arthritis was active, but Methotrexate "somewhat improved" her condition." *Id*. at 274. In an exam of July 2005, Plaintiff was found to have synovitis in the hands, with some in the wrist, and "rheumatoid with persistent disease activity." *Id*. at 266. Finally, in December 2005, Dr. Saway found

Plaintiff's weight to be at 223 lbs., with "rheumatoid, active, but symptomatically better." *Id.* at 259.

Although the ALJ did not specifically note the conclusions of Dr. Saway, the ALJ clearly took them into consideration. The ALJ noted the findings of Dr. Minh, who found that Dr. Saway's February 2006 evaluation of Plaintiff, in which he "evaluated pain to such a level as to cause distraction, included no physical findings to suggest debilitating level of pain or any reference to side effects creating any substantive problem." (Tr. at 19.) Further, Dr. Blake's January 2006 evaluation of Plaintiff, only one month prior to Dr. Saway's February 2006 examination, found Plaintiff to be of a "relatively healthy status." *Id.* Not only did the ALJ find Dr. Saway's conclusions to be inconsistent with the evidence of record, she also took note of the fact that there were "no clinical findings even by Dr. Saway to support his own drastic conclusory statements." *Id.*

Based on the Court's review of the record, the ALJ properly considered all medical evidence of record in determining that Plaintiff did not meet a period of disability.

B. Residual Functional Capacity.

Plaintiff further alleges that the ALJ's RFC findings are not based on substantial evidence. (Doc. 7 at 8.) Specifically, Plaintiff contends that, in presenting a hypothetical to the VE, the ALJ failed to include all of claimant's limitations, namely the opinion of Dr. Lisiak that "there would be no expected limitation in the claimant's ability to perform tasks of manual dexterity on an *occasional* basis."[2] *Id*. at 8-9 (emphasis added).

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (*citing Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999)). In *Pendley v. Heckler*, the court held "that unless there was vocational expert testimony concerning the availability of jobs for a person with the claimant's educational level, work skills and experience and physical limitations, the decision of the ALJ, based significantly on the expert testimony, would be unsupported by substantial evidence." 767 F.2d 1561, 1562 (11th Cir. 1985). (Doc. 7 at 8-9)(emphasis added).

---

[2]Under SSR 83-10, "'occasionally' means occurring from very little up to one-third of the time." Soc. Sec. Rep. Serv. 24, 1983 WL 31251 (S.S.A.).

In determining Plaintiff's RFC, the ALJ in the instant case considered the testimony of the vocational expert ("VE"), Dr. Julia Russell. (Tr. at 20.) Based upon the conclusions of Dr. Minh and Dr. Minh's determination of Plaintiff's RFC,[3] the ALJ asked the VE to assume the following:

> a hypothetical individual who would be limited to lifting 20 pounds occasionally and 20 pounds frequently, . . ., who could sit for six hours out of eight hours with normal breaks, who could not be exposed to vibrations, who could only assume the postural positions occasionally, who could not be exposed to ladders, ropes or scaffolds, would need to avoid exposure to extreme cold and extreme wetness, would need to avoid exposure to unprotected heights and dangerous machinery and would be limited to simple tasks in a non-threatening environment.

*Id*. at 326. In considering such a situation, the VE determined the hypothetical individual could not perform any of Plaintiff's past relevant work. *Id*. However, in considering a "hypothetical individual of the same age, education and work background as the Claimant, with the same limitations," the VE determined jobs at "both the light and the sedentary levels of exertion" exist in the national and regional economy. The work of cashiers, clerical workers and material handlers could all be performed by such an individual. *Id*.

---

[3]*See supra* p. 10.

While the ALJ specifically referenced several of Dr. Lisiak's findings regarding Plaintiff, she did not note Dr. Lisiak's opinion that "there would be no expected limitation in the claimant's ability to perform tasks of manual dexterity on an occasional basis." (Tr. at 201). Further, the ALJ did not reference Dr. Lisiak's opinion in the hypothetical presented to the VE, nor did the ALJ discredit Dr. Lisiak's opinion or give any indication as to why it was not included in the hypothetical. Thus the ALJ did not "pose a hypothetical question which comprises all of the claimant's impairments." *Wilson,* 284 F.3d at 1227. Therefore, this Court finds that the ALJ's decision regarding Plaintiff's RFC is not based on substantial evidence and remands this case to the ALJ for consideration of Dr. Lisiak's opinion regarding the ability of Plaintiff to perform manual dexterity tasks on an occasional basis.

IV.   Conclusion.

Upon review of the administrative record, and considering all of Ms. Harris's arguments, the Court finds that the ALJ's decision is not supported by substantial evidence. For the foregoing reasons, the ALJ's denial of benefits is **vacated**, and the case is **remanded** to the ALJ for further

proceedings consistent with this opinion.  A corresponding order will be entered contemporaneously with this Memorandum of Opinion.

Done this 18th day of July 2008.

                             L. SCOTT COOGLER
                      UNITED STATES DISTRICT JUDGE
                                                          153671